**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | |
|---|---|
| **JAMIE T.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. CBD-20-3382** |
| ) | |
| **KILOLO KIJAKAZI[1],** ) | |
| ) | |
| **Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Jamie T. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner").  The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental Security Income Benefits ("SSI") under Title XVI of the SSA.  Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 15, Plaintiff's Alternative Motion for Remand, ECF No. 15, ("Plaintiff's Alternative Motion"), and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 20.  The Court has reviewed the motions, related memoranda, and the applicable law.  No hearing is deemed necessary.  *See* Loc. R. 105.6 (D. Md.).  For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion.  A separate order will issue.

---

[1] When this proceeding began, Andrew Saul was the Acting Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi was sworn in as Commissioner and is therefore, automatically substituted as a party.  *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## I.      Procedural Background

On May 1, 2018, Plaintiff filed for DIB and SSI under Titles II and XVI of the SSA, alleging disability beginning February 19, 2018.  R. 23.  Plaintiff alleged disability due to severe migraines and multiple sclerosis.  R. 67–68, 77–78, 91–92, 103–04.  Plaintiff's claims were initially denied on July 31, 2018, and upon reconsideration on March 19, 2019.  R. 23.  An administrative hearing was held on February 7, 2020.  R. 23.  On March 3, 2020, Plaintiff's claims for DIB and SSI were denied.  R. 32.  Plaintiff sought review by the Appeals Council, which concluded on October 26, 2020, that there was no basis for granting the request for review.  R. 1.  Plaintiff subsequently filed an appeal with this Court.  ECF No. 1.

## II.     Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law.  *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163-64 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).  "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence."  *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is "more than a mere scintilla."  *Russell*, 440 F. App'x at 164.  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v.*

*Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."  *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts.  *Hays*, 907 F.2d at 1456 (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).  The Code of Federal Regulations outlines a five-step process ("Five-Step Analysis") that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i)(2012).  If he is doing such activity, he is not disabled.  If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909] or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012).  If he does not have such impairment or combination of impairments, he is not disabled.  If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012).  If he does have such impairment, he is disabled.  If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012).  If he can perform such work, he is not disabled.  If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012).  If he can perform other work, he is not disabled.  If he cannot, he is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five.  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis."  20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c).  In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'"  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. §§ 404.1545(a), 416.945 (a).  The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain

how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

## III.    Analysis

The ALJ evaluated Plaintiff's claim using the Five-Step Analysis. R. 25–32. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 19, 2018, the amended alleged onset date. R. 25. At step two, under 20 C.F.R. § 404.1520(c) and § 416.920(c), the ALJ determined that Plaintiff had the following severe impairments: Multiple Sclerosis (MS), migraines, and obesity. R. 25. The ALJ stated that the listed impairments were severe because they "significantly limit [Plaintiff's] ability to perform basic work activities." *Id.* At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." R. 25–26. Before turning to step four, the ALJ

determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§

404.1567(b) and 416.967(b) with the following additional limitations:

> [Plaintiff] can frequently but not always climb stairs, stoop, kneel, crouch, and
> crawl.  [Plaintiff] can never climb ladders.  [Plaintiff] can have no more than frequent
> exposure to dust, fumes, or pulmonary irritants.  [Plaintiff] can have no more than frequent
> exposure to extreme heat.  [Plaintiff] can have no exposure to sustained, loud noises.
> [Plaintiff] can have no exposure to bright lights.  [Plaintiff] can have no exposure to
> workplace hazards such as unprotected heights or dangerous machinery.  [Plaintiff] can
> reach overhead with the left arm frequently but not always.  [Plaintiff] can handle objects
> (gross manipulation) with the left hand frequently but not always.  [Plaintiff] can finger
> objects (fine manipulation) with the left hand frequently but not always.  [Plaintiff] can
> frequently but not always push or pull foot controls with the left foot.

R. 26.  At step four, with the benefit of a Vocational Expert ("VE"), the ALJ determined that

Plaintiff can perform her past relevant work as a Fast-Food Assistant Manager and Store

Manager.  R. 30.  The ALJ found that Plaintiff has not been under a disability, since February 19,

2018, as defined in the SSA.  R. 32.

On appeal, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence

and is "completely made-up."[2]  Pl.'s Mem. in Supp. of Pl.'s Mot. 9–12, ECF No. 15–1.

Specifically, Plaintiff argues that the "ALJ's RFC does not reflect all of [Plaintiff's]

substantiated limitations."  *Id.* at 9.  Plaintiff alleges that the RFC "is not based on any medical

evidence in the file."  *Id.* at 10.  Plaintiff asserts that the ALJ incorrectly found Dr. Yonker's

opinion not persuasive despite being Plaintiff's treating physician.  *Id.* at 10.  Defendant

contends that the ALJ's RFC is supported by substantial evidence, including proper evaluation of

the opinion evidence.  Def.'s Mem. in Supp. of Def.'s Mot. 4, ECF No. 20–1.  Defendant avers

that "the ALJ's narrative discussion clearly cited to medical and nonmedical evidence to support

the RFC finding for a limited range of light work, and the ALJ explained the substantial evidence

---

[2] The Court has summarized Plaintiff's arguments for conciseness.

that supported the RFC finding." *Id.* at 5.  Defendant also argues that Plaintiff is "impermissibly

asking this Court to re-weigh the evidence." *Id.* at 8.  For the reasons set forth below, the Court

**DENIES** Plaintiff's Motion and **AFFIRMS** the ALJ's decision.

## Residual Functional Capacity

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct

legal standards and whether the factual findings are supported by substantial evidence.  *Grimes v.*

*Berryhill*, No. CV TMD 17-1794, 2018 WL 4206936, at *4 (D. Md. Sept. 4, 2018) (citing

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  "In other words, the issue before the Court is

not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the

relevant law." *Id.*

In making the RFC assessment, the ALJ must consider all relevant evidence of the

claimant's impairments and any related symptoms.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).

The ALJ likewise must present a "narrative discussion describing how the evidence supports

each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence

(e.g. daily activities, observations)," and must then "explain how any material inconsistencies or

ambiguities in the evidence in the case record were considered and resolved."  SSR 96-8p, 1996

WL 374184, at *7 (S.S.A.).

A proper RFC analysis has three components: (1) evidence, (2) logical explanation, and

(3) conclusion. *Thomas*, 916 F.3d at 312.  The second component, the ALJ's logical explanation,

is just as important as the other two. *Id.*  Indeed, our precedent makes clear that meaningful

review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion. *Id.*

(citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).  "The ALJ has the obligation to

consider *all* relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (emphasis added).  The ALJ must also include "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

The Commissioner employs a VE to offer evidence on whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work.  20 C.F.R. §§ 404.1560(a)(b)-(c) (2011), 416.960(b)-(c) (2011).  The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)."  20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)).  A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted).  The ALJ is afforded substantial leeway in the formulation of hypothetical questions.  *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999)).

**1. The ALJ adequately supported his narrative discussion and thus the RFC was supported by substantial evidence.**

As stated above, Plaintiff argues that the RFC does not represent all of Plaintiff's limitations, and that the RFC is not based on any medical evidence in the file. Pl.'s Mem. in Supp. of Pl.'s Mot. 10. Plaintiff's argument is without merit as the ALJ sufficiently supported his RFC.

First, the ALJ summarized Plaintiff's testimony and stated:

[Plaintiff] has MS, which is stable without the use of medication. [Plaintiff] uses a cane, as needed. [Plaintiff's] left side is numb. [Plaintiff] has constant tingling and burning on the side of her head, face, and mouth. [Plaintiff] has difficulty handling and grasping objects with her left hand because of numbness in her fingertips. [Plaintiff] has sporadic tingling and burning in her knee and leg. [Plaintiff] elevates her legs at chair level because they hurt. [Plaintiff] said that she has throbbing headaches that blur her vision and limit her ability to concentrate. [Plaintiff] has headaches two to three times a week that usually last a couple of hours. [Plaintiff] recovers from a headache by lying down in a dark room. Sometimes [Plaintiff] uses a cold rag. [Plaintiff] uses medication that relieves her headache pain but does not take it away. [Plaintiff] experiences dizziness daily. [Plaintiff] has urinary incontinence and uses adult diapers. Secondary to pain, [Plaintiff] is tired and fatigued. [Plaintiff] cannot concentrate or focus, and [Plaintiff] is forgetful. [Plaintiff] puts dishes in the dishwasher. [Plaintiff] is capable of taking care of her infant child alone. [Plaintiff] does not pick him up because it hurts her arm. [Plaintiff] could walk up to 10-15 minutes before she needs to take a break. [Plaintiff] lays down for up to 20 to 30 minutes at a time a couple of times per day. [Plaintiff] further testified that she is never home alone because she needs help taking care of her child and herself. [Plaintiff] sits on her porch every day. [Plaintiff] smokes cigarettes, although a doctor advised her to stop because it could interfere with her ability to use prescribed medication. [Plaintiff] does not do anything for fun. [Plaintiff] occasionally goes to her child's medical appointments.

R. 27. The ALJ stated that:

After careful consideration of the evidence, I find [Plaintiff's] medically determinable impairments could cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence, and other evidence in the record.

R. 27. The ALJ explained that while Plaintiff reported pain and fatigue, the "objective findings do not explain the etiology of her complaints." R. 27. For instance, while an MRI initially

confirmed that Plaintiff suffered from MS, a subsequent MRI revealed that the largest plaque decreased in size.  R. 27.  Although Plaintiff complained of numbness of her fingertips, her sensation to touch and pressure was intact.  R. 27.  The ALJ also found that Plaintiff's sensation to vibration was intact; Plaintiff had normal muscle strength in the upper and lower extremities; Plaintiff's deep tendon reflexes were normal and symmetrical; and Plaintiff's coordination was normal.  R. 27–28.  Even so, the ALJ explained that he limited Plaintiff to "frequent handling and fingering objects with the left hand and frequent pushing or pulling of foot controls with the left foot" to account for deficits due to left-sided weakness and numbness.  R. 28. The ALJ also found that although Plaintiff testified to using a cane, there is no evidence that a cane is medically necessary.  R. 28.  In fact, the ALJ noted that Dr. Yonker even stated that Plaintiff did not need to use a cane or an assistive device, while engaging in occasional standing/walking.  R. 28.

When discussing Plaintiff's migraines, the ALJ noted that Plaintiff reported that she failed multiple medications and she had headaches more than 15 days per month.  R. 28.  Yet, during an active migraine, Plaintiff did not appear to be in distress–since she sat comfortably, her heart sounds were normal, and her musculoskeletal evaluation was unremarkable.  R. 28.  Dr. Yonker also encouraged Plaintiff to drink more water, and described Plaintiff's migraines as "unspecified, not intractable, [and] without status migrainosus."  R. 28.  The ALJ also stated that strong odors, bright lights, heat, and noise triggered Plaintiff's headaches, and that Dr. Yonker believed that if Plaintiff stopped smoking, it could relieve her overall pain.  *Id.*  Even still, the ALJ remarked that Plaintiff smelled liked tobacco and smoked cigarettes daily.  *Id.*  Nevertheless, the ALJ limited Plaintiff to no more than frequent exposure to dust, fumes, or pulmonary irritants.  *Id.*

The ALJ then considered Plaintiff's activities of daily living, including caring for her children and infant, making her bed, folding laundry, using a computer, and attending social events.  R. 28 – 29.  The ALJ concluded that overall, the objective physical findings, radiographs, and the conservative level of treatment, do not support Plaintiff's allegations and disabling symptoms and limitations.  R. 28.  The ALJ also considered Plaintiff's obesity and articulated that "[t]he combined effects of obesity with another impairment may be greater than the effects of each of the impairments considered separately."  R. 29.  As a result, the ALJ considered all work-related physical and mental limitations due to Plaintiff's obesity when formulating the RFC.  R. 29.

When considering the medical opinion evidence, the ALJ noted that he did not find the Disability Determination Services (DDS) consultants' persuasive in that Plaintiff could perform work at all exertional levels, and that she did not have manipulative or postural limitations.  R. 29.  The ALJ explained that the objective findings showed decreased sensation, "which could reasonably limit [Plaintiff's] ability to lift and carry heavy objects and to perform manipulations."  R. 29.  The ALJ also found that Plaintiff had normal muscle strength of the major groups of the upper and lower extremities.  R. 29.  Thus, the ALJ limited Plaintiff to frequent postural activities.  R. 29.  The ALJ also concluded that since Plaintiff's deep tendon reflexes were normal and symmetrical, and Plaintiff's coordination was normal, Plaintiff's environmental limitations "are warranted secondary to Plaintiff's migraine headaches and sensation abnormalities."  R. 29.

When considering Plaintiff's mental health limitations, the ALJ found that the DDS consultants' assessment was persuasive, which stated that Plaintiff had no mental medically determinable impairments.  R. 30.  The ALJ explained that the assessment is consistent with

unremarkable mental status findings.  R. 30.  The ALJ also supported his findings by noting that Plaintiff displayed good judgment; Plaintiff had a normal mood, Plaintiff's affect was normal and active; Plaintiff was oriented to time, place, and person; and Plaintiff's recent memory and remote memory were normal.  R. 30.  The ALJ explained that these opinions were consistent with Plaintiff's lack of treatment for mental health issues.  R. 30.

The record reflects that the ALJ conducted a function-by-function assessment of Plaintiff's mental limitations and explained why Plaintiff was limited to light work with additional limitations.  R. 26–30.  Since the ALJ built "an accurate and logical bridge" and provided sufficient explanation regarding Plaintiff's limitations throughout the RFC narrative, the Court finds no reversible error.

**2. The ALJ properly evaluated the medical opinion evidence.**

Plaintiff also contends that the ALJ erroneously evaluated the medical opinion evidence. Pl.'s Mem. in Supp. of Pl.'s Mot. 10.  Specifically, Plaintiff contends that "Dr. Yonker's opinions are consistent with the substantial evidence and should have been used to form the basis for the ALJ's RFC limiting [Plaintiff] to less than sedentary work."  *Id.* at 10–11.  This argument also fails.

For medical claims filed on or after March 27, 2017, an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including those from a claimant's medical source.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider how persuasive he finds all the medical opinions and prior administrative medical findings by using five factors:  (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors that tend to support or contradict the

opinion, such as the medical source's familiarity with other evidence in the claim, and understanding of the disability program's policies and evidentiary requirements.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  In assessing the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The Court finds that the ALJ properly considered Dr. Yonker's opinion and supported his decision with substantial evidence.  The ALJ considered two Medical Source Statements from Dr. Yonker.  R. 30.  The ALJ noted that Dr. Yonker opined the following:

> [Plaintiff] could lift and carry 10 pounds occasionally.  [Plaintiff] could walk less than one block.  In an eight-hour workday, [Plaintiff] could stand, sit, and walk less than two hours.  [Plaintiff] needs to elevate her feet 50% of the time.  [Plaintiff] could never stoop, crouch, or twist.  [Plaintiff] needs to alternate between sitting and standing once per hour for 20 to 30 minutes each time.  [Plaintiff] could use her hands and fingers 33% of the time.  [Plaintiff] could use her arms to reach 33% of the time . . . [Plaintiff] would be incapable of low stress.  [Plaintiff] would be off task for more than 25% of the day.  [Plaintiff] would miss more than four days of work per month.  [Plaintiff] would need to lie down for 24 hours two to three days a week (internal citations omitted).

R. 30.  The ALJ explained that "Dr. Yonker's opinions seriously underestimated [Plaintiff's] functioning and were not persuasive because the objective evidence does not support the limitations."  *Id.*  Specifically, the ALJ found that prior to issuing the medical opinions, Dr. Yonker "had not advised [Plaintiff] to elevate her feet"; "Dr. Yonker did not remark that

[Plaintiff] appeared stressed or that she had difficulty coping"; and "[Dr. Yonker] routinely said that [Plaintiff] was in 'no distress.'" *Id.* The ALJ also noted that Dr. Yonker did not document any physical limitations that would affect Plaintiff's ability to stand or sit, and the ALJ pointed out that another physician even recommended that Plaintiff walk for 30 minutes daily (internal citations omitted). R. 30. The ALJ also considered Dr. Yonker's treatment recommendations and found that it was not consistent "with what one would expect if [Plaintiff] were disabled." R. 30. For instance, Dr. Yonker opined that Plaintiff did not require a cane or assistive device when occasionally walking or standing. R. 28. For Plaintiff's migraines, Dr. Yonker prescribed Maxalt, which Plaintiff said helped, and Dr. Yonker advised Plaintiff "to drink more water." R. 28. Dr. Yonker also believed that strong odors triggered Plaintiff's headaches, and Dr. Yonker believed that "smoking cessation could help relieve [Plaintiff's] overall pain." R. 28.

The ALJ properly considered the medical opinion evidence and explained why he did not find Dr. Yonker's opinion persuasive. The ALJ considered the medical evidence and afforded the limitations he believed was appropriate. The ALJ also supported his conclusions with substantial evidence. The Court is not permitted to engage in re-weighing of the evidence, and as mentioned above, the ALJ, has the responsibility to make findings of fact and resolve evidentiary conflicts. *See Hays*, 907 F.2d at 1456 (It is not the Court's role to "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."). Accordingly, the Court finds no error in the ALJ's analysis.

## IV.   Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, and **GRANTS** Defendant's Motion.


March 31, 2022                                              _____/s/_____
                                                           Charles B. Day
                                                           United States Magistrate Judge


CBD/pjkm